UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTONIO D. BOYKINS,

       Plaintiff,

v.                                          Case No. 1:13-cv-1024
                                          Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for Supplemental Security Income (SSI).

Plaintiff was born on April 22, 1976 (AR 186).[1] This is plaintiff's second application for SSI. Plaintiff had filed a previous application for SSI on December 10, 2004, in which he alleged a disability onset date of April 18, 1992 (AR 5). The application was denied and resulted in an administrative hearing and an unfavorable decision entered by Administrative Law Judge (ALJ) Thomas L. English on March 27, 2008 (AR 5). On June 4, 2010, the Appeals Council denied a request for review of the unfavorable decision (AR 5).

This appeal involves an application for SSI filed on October 26, 2010, approximately four months after the Appeals Council declined to review ALJ English's decision. In the 2010 application, plaintiff alleged a disability onset date of December 31, 2002 (AR 186). The record

---

[1] Citations to the administrative record will be referenced as (AR "page #").

reflects that plaintiff completed the 11th grade (attending some special education classes) (AR 192). He had previous employment as a janitor (for a "couple weeks") and line worker for various temporary services (AR 192).  Plaintiff  identified his disabling conditions as: learning disabled; severe sleep apnea; gout in left foot; ingrown plantar warts on both feet; emotional problems; high blood pressure; asthma; and sickle cell anemia (AR 191).  On May 11, 2012, ALJ Paul W. Jones reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 5-16).  In reaching his decision, ALJ Jones found that "the doctrine of *res judicata* applied to the issue of disability prior to March 27, 2008, the date of the prior final decision" (AR 5). ALJ Jones' decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.  LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).  A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only.  This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that

2

the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work

through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).

However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant

number of jobs in the economy that accommodate the claimant's residual functional capacity

(determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not

disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861

F.2d 991, 993 (6th Cir. 1988).

   "The federal court's standard of review for SSI cases mirrors the standard applied

in social security disability cases."  *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d

716, 719 (W.D. Mich. 2007).  "The proper inquiry in an application for SSI benefits is whether the

plaintiff was disabled on or after her application date."  *Casey v. Secretary of Health and Human*

*Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.  ALJ'S DECISION

   Plaintiff's claim failed at the fifth step.  At step one, ALJ Jones found that plaintiff

had not engaged in substantial gainful activity since the application date of October 26, 2010 (AR

7).  At step two, the ALJ found that plaintiff suffered from a severe impairment of an affective

disorder (AR 7).  In reaching this determination, the ALJ found that plaintiff's complaints of bilateral

foot pain and "sickle cell trait" were not medically determinable impairments, and that three of

plaintiff's conditions ( obesity, substance abuse and a cognitive disorder) were non-severe (AR 7).

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments

that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P,

App.1 specifically Listing 12.04 (affective disorders) (AR 8).

ALJ Jones decided at the fourth step that plaintiff had the residual functional capacity (RFC) "to perform a full range of work at all exertional levels, but is non-exertionally limited to simple, routine, and repetitive tasks with occasional interaction with the public" (AR 9). The ALJ further found that plaintiff had no past relevant work as defined in 20 C.F.R. § 416.965 (AR 15). At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, medium exertional level jobs in the region such as: dishwasher (8,575 jobs); janitor (35,535 jobs); and assembler (32,520 jobs) (AR 15-16).[2] Accordingly, ALJ Jones determined that plaintiff has not been under a disability, as defined in the Social Security Act, since October 26, 2010, the date he filed the application for SSI (AR 16).

### III. ANALYSIS

Plaintiff raised four issues on appeal.

**A.    Did the doctrine of *res judicata* require the ALJ to find the same severe medical impairments as an earlier decision when there was no evidence of medical improvement?**

Plaintiff contends that ALJ Jones erred because he failed to include the severe medical impairments identified by ALJ English in the March 27, 2008 decision denying benefits and there is no evidence that plaintiff experienced medical improvement since 2008.  In his decision, ALJ English found that plaintiff had four severe impairments: "borderline intellectual functioning; sickle cell trait; bilateral foot pain with rash; and affective disorder, adjustment disorder" (AR 75). ALJ Jones' decision found that plaintiff had the sole severe impairment of affective disorder (AR 7).   Plaintiff contends that ALJ Jones did not comply with the requirements of *Drummond v.*

---

[2] While the ALJ did not specify the geographic location of these jobs, the vocational expert testified that the region at issue was the lower peninsula of Michigan (AR 57).

*Commissioner of Social Security*, 126 F.3d 837, 842 (6th Cir. 1997), which provides in pertinent part

that "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by

the findings of a previous ALJ."

      In response to the *Drummond* decision, the Social Security Administration (SSA)

adopted Acquiescence Ruling (AR) 98-4(6).[3]  In AR 98-4(6), the SSA explained the *res judicata*

effect of the *Drummond* decision as follows:

> Under SSA policy, if a determination or decision on a disability claim has
> become final, the Agency may apply administrative res judicata with respect to a
> subsequent disability claim under the same title of the Act if the same parties, facts
> and issues are involved in both the prior and subsequent claims.  However, if the
> subsequent claim involves deciding whether the claimant is disabled during a period
> that was not adjudicated in the final determination or decision on the prior claim,
> SSA considers the issue of disability with respect to the unadjudicated period to be
> a new issue that prevents the application of administrative res judicata.  Thus, when
> adjudicating a subsequent disability claim involving an unadjudicated period, SSA
> considers the facts and issues de novo in determining disability with respect to the
> unadjudicated period.
>
> The Sixth Circuit concluded that where a final decision of SSA after a
> hearing on a prior disability claim contains a finding of a claimant's *residual
> functional capacity*, SSA may not make a different finding in adjudicating a
> subsequent disability claim with an unadjudicated period arising under the same title
> of the Act as the prior claim unless new and additional evidence or changed
> circumstances provide a basis for a different finding of the claimant's residual
> functional capacity.

AR 98-4(6) (emphasis added).

      The SSA then set forth the following procedure applicable to disability claimants who

reside in the Sixth Circuit (i.e., Kentucky, Michigan, Ohio or Tennessee):

---

[3] "Acquiescence Rulings explain how SSA will apply a holding by a United States Court of Appeals that is at variance with the agency's national policies for adjudicating claims."  *Hagans v. Commissioner of Social Security*, 694 F.3d 287, 301 (3rd Cir. 2012) (internal quotation marks and brackets omitted).  While Acquiescence Rulings are binding within the SSA, they do not have the force and effect of law or regulations.  *Id.* at 302.

When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

AR 98-4(6).

As an initial matter, the issue presented by plaintiff is distinguishable from *Drummond*, because it does not involve an RFC determination. Rather, plaintiff contends that the ALJ failed to adopt the severe impairments identified in the earlier decision. However, even if both *Drummond* and AR 98-4(6) are construed as applicable to a previous finding of a severe impairment, any alleged error by ALJ Jones was harmless. A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Serivces*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Maziarz*, 837 F.2d at 244. An ALJ can consider such non-severe conditions in determining the claimant's residual functional capacity. *Id.* "The fact that some of [the claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008). Here, ALJ Jones found that plaintiff had a severe impairment of an affective disorder (AR 7). The ALJ's failure to include other severe impairments at step two is legally irrelevant. Accordingly, plaintiff's claim of error should be denied.

**B.      Did the ALJ fail to apply SSR 02-1p in evaluating the severity of the plaintiff's obesity, as indicated by his weight of 223 pounds and BMI of 37.1?**

Plaintiff contends that ALJ Jones failed to consider his obesity, citing SSR 02-1p ("Evaluation of obesity").[4]  Although the agency deleted obesity from the Listing of Impairments in 20 C.F.R., subpart P, Appendix 1, the Commissioner views obesity as a medically determinable impairment that can be considered when evaluating a claimant's disability.   SSR 02-1p provides in pertinent part:

> [Even] though we deleted listing 9.09, we made some changes to the listings to ensure that obesity is still addressed in our listings. In the final rule, we added paragraphs to the prefaces of the musculoskeletal, respiratory, and cardiovascular body system listings that provide guidance about the potential effects obesity has in causing or contributing to impairments in those body systems. See listings sections 1.00Q, 3.00I, and 4.00F. The paragraphs state that we consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. They also instruct adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity.

SSR 02-01p, 2002 WL 34686281 (Sept. 12, 2002).

While SSR 02-1p provides guidance for the ALJ in evaluating a claimant's obesity, it does not create a separate procedure requiring the Commissioner to consider obesity in every case.

---

[4] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency.  20 C.F.R. § 402.35(b)(1).  While SSR's do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Commissioner of Social Security*, 167 Fed.Appx. 496, 498 (6th Cir. 2006), quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 549 (6th Cir.2004) (citations omitted).

> Social Security Ruling 02-01p does not mandate a particular mode of analysis.  It only states that obesity, in combination with other impairments, "may" increase the severity of the other limitations. It is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants.

*Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 411-12 (6th Cir. 2006).

Here, ALJ Jones addressed plaintiff's obesity, referring to his height and weight as reported to his medical treaters (AR 10-11).  The ALJ's decision included the following discussion regarding plaintiff's obesity. G. Mindock, PA-C, diagnosed plaintiff in June 2008 with flat feet, plantar fasciitis, viral warts and obesity (243 pounds) (AR 10).  However, in July 2008, P. Chaloori, M.D., noted that while plaintiff's "current problem list" included obesity, plaintiff had normal activity and energy level, no fatigue and was in no acute distress (AR 10, 335).  In October 2008, D. Miramontes, M.D. reported that plaintiff's extremities had color, movement, sensation, normal muscle bulk and toe, and equal peripheral pulses with no edema (AR 10).  G. Mindock noted that plaintiff's weight ranged from 229 pounds in July 2009 to 214 pounds in January 2010, and 228 pounds in November 2010 (AR 11).  Plaintiff received treatment for plantar's wart and was counseled to cease smoking, but stated that he was not interested in quitting (AR 11).  At a consultative examination on December 21, 2010, S. Elfallal, D.O. reported that plaintiff was 65" tall, weighed 223 pounds, had a full range of motion, a normal gait, did not require the use of any assistive devices for ambulation, had no clubbing, cyanosis, edema or swelling, and had normal blood pressure (despite claiming that he suffered from hypertension) (AR 11).  ALJ Jones also noted that plaintiff was able to care for his personal needs with only minor assistance on occasion, and could prepare simple meals, do light housekeeping chores, go shopping, attend church and watch television (AR 13).  In addition, the ALJ specifically addressed plaintiff's obesity as follows:

Claimant is obese, with his height at 66" and weight at 220 pounds. I am aware that obesity often complicates existing medical problems, and that the effects of this condition may not be readily apparent. The combined effects of obesity with other impairments may be greater than might be expected without the disorder. I considered any added and accumulative effects this condition played on claimant's ability to function. In spite of his weight, clinicians observed claimant ambulated well normally without an assistive device.

(AR 7-8).

The record reflects that ALJ Jones mentioned plaintiff's weight and diagnosis of obesity and considered it in combination with plaintiff's other impairments. ALJ Jones' explicit discussion of the plaintiff's obesity indicates sufficient consideration of his obesity under the regulations and SSR 02-01p. *See Coldiron v. Commissioner of Social Security*, 391 Fed. Appx. 435, 443 (6th Cir. 2010); *Allen v. Colvin*, No.3:10-cv-01024,  2014 WL 1775564 at *21 (M.D. Tenn. April 29, 2014).  Accordingly, plaintiff's claim of error should be denied.

### C.   Was the ALJ's credibility finding supported by the evidence of record?

### 1.   ALJ Jones' credibility determination

An ALJ may discount a claimant's credibility where the ALJ  "finds contradictions among the medical records, claimant's testimony, and other evidence."  *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997).  "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony."  *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972).  The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of*

10

*Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb

a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew,

resolve conflicts in the evidence, or decide questions of credibility."   *Sullenger v. Commissioner*

*of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007).   Nevertheless, an ALJ's credibility

determinations regarding subjective complaints must be reasonable and supported by substantial

evidence.  *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

Here, plaintiff contends that the ALJ used flawed "boilerplate language" to evaluate

his credibility, when the ALJ stated that:

> After careful consideration of the evidence, I find that claimant's medically
> determinable impairments could reasonably be expected to cause the alleged
> symptoms; however, claimant's statements concerning the intensity, persistence and
> limiting effects of these symptoms are not credible to the extent they are inconsistent
> with the above residual functional capacity assessment.

(AR 13).  Plaintiff relies on the Seventh Circuit decision in *Bjornson v. Astrue*, 671 F.3d 640 (7th

Cir. 2012), which criticized the Agency's use of this language in ALJ decisions:

> One problem with the boilerplate is that the assessment of the claimant's
> "residual functional capacity" (the bureaucratic term for ability to work) comes later
> in the administrative law judge's opinion, not "above" — above is just the
> foreshadowed conclusion of that later assessment.   A deeper problem is that the
> assessment of a claimant's ability to work will often (and in the present case) depend
> heavily on the credibility of her statements concerning the "intensity, persistence and
> limiting effects" of her symptoms, but the passage implies that ability to work is
> determined first and is then used to determine the claimant's credibility.   That gets
> things backwards.  The administrative law judge based his conclusion that Bjornson
> can do sedentary work on his determination that she was exaggerating the severity
> of her headaches.   Doubts about credibility were thus critical to his assessment of
> ability to work, yet the boilerplate implies that the determination of credibility is
> deferred until ability to work is assessed without regard to credibility, even though
> it often can't be.  In this regard we note the tension between the "template" and SSR
> 96–7p(4), www. ssa. gov/ OP_ Home/ rulings/ di/ 01/ SSR 96– 07– di– 01. html
> (visited Jan. 4, 2012), which states that "an individual's statements about the
> intensity and persistence of pain or other symptoms or about the effect the symptoms
> have on his or her ability to work may not be disregarded solely because they are not

substantiated by objective medical evidence." The applicant's credibility thus cannot be ignored in determining her ability to work (her residual functional capacity, in SSA-speak).

*Bjornson*, 671 F.3d at 645-46. The court also opined that "[t]he Social Security Administration had better take a close look at the utility and intelligibility of its 'templates.'" *Id.* at 646.

Notwithstanding the Seventh Circuit's criticism of this "opaque boilerplate," *id.* at 644, the Court did not summarily reverse the ALJ's decision for using the boilerplate, *see id.* at 644-49. Rather, the Court considered the ALJ's specific reasons for rejecting the ALJ's credibility determination. *See id.* at 646 ("[t]he administrative law judge based his doubts about Bjornson's credibility on his assessment of the medical reports or testimony of the three doctors whom we've mentioned"). Thus, the ALJ's use of the language in this case is not, in and of itself, grounds for reversal because the ALJ also gave specific reasons for rejecting plaintiff's credibility. Examples of the ALJ's reasons include the following:

I note that claimant has described daily activities which are not limited to the extent one would expect, given his complaints of disabling symptoms and limitations. Despite alleging a total inability to work and indicating that he was very limited in what he could do, claimant reported he was able to care for his personal needs, with only minor assistance on occasion. He also reported she was able to prepare simple meals, do light housekeeping chores, go shopping, attend church, and watch television. Certainly, these are not the activities and abilities of an individual who is completely unable to engage in any substantial gainful activity and clearly reflect the ability to perform the significant number of unskilled jobs cited by the impartial vocational expert under the residual functional capacity adopted in this decision, which includes the most serious restrictions established by the medical evidence.

A review of claimant's work history shows that claimant worked only sporadically prior to the alleged disability onset date, which raises a question as to whether claimant's continuing unemployment is actually due to medical impairments. It is noted that claimant has never performed work at Substantial Gainful Activity Levels. Yet, claimant testified he had looked for work, which clearly indicates that even claimant does not believe that his medically diagnosed

12

impairments limited his functioning to such an extent that he would not be able to perform any work.

Claimant has a history of substance abuse, which is well documented and detracts from his credibility because his testimony is in direct contrast to the evidence of record. Claimant stated he last used marijuana two years ago, but the evidence indicates he admitted to a counselor at Summit Pointe on December 30, 2011, that he smoked marijuana one to three times per month (Exhibit 6F). Claimant's credibility is further damaged by the fact that he has spent 5+ years of the past 15 years incarcerated for various charges, including possession of cocaine and multiple child support convictions. He also testified he had been in jail every year for 3-6 months for various convictions.

(AR 13-14). Accordingly, this claim of error is denied.

### 2. ALJ Jones' evaluation of a lay witness

Plaintiff includes a very brief sub-argument claiming that ALJ Jones improperly rejected a lay witness statement of plaintiff's friend, Claudette Olivas. In an unsworn affidavit, Ms. Olivas stated among other things: that plaintiff's feet swell; that it takes him 1 1/2 hours to walk to a store which should be a 15 to 20 minute walk; that he has to sit while cooking meals; that he cannot walk to second floor or basement of his house (13 and 9 stairs respectively); that he has sickle cell problems; that he suffers from sleep apnea; that he gets "angry and agitated very quickly;" and that he can no longer ride a bicycle, ride a dirt bike or go on nature walks (AR 281-83). "The testimony of lay witnesses . . . is entitled to perceptible weight only if it is fully supported by the reports of the treating physicians." *Simons v. Barnhart*, 114 Fed.Appx. 727, 733 (6th Cir. 2004), citing *Lashley v. Secretary of Social Security*, 708 F.2d 1048, 1054 (6th Cir.1983).

In his decision, ALJ Jones determined that Ms. Olivas' statement was not entitled to significant weight:

I conclude that the affidavit of claimant's friend Claudette Olivas, completed in April 2012, does not establish that claimant is disabled (Exhibit 10E). Since Ms. Olivas is not medically trained to make exacting observations as to dates,

frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of her affidavit is questionable. Moreover, by virtue of the relationship as a friend of claimant, Ms. Olivas cannot be considered a disinterested third party witness whose reports of restriction in functioning would not tend to be colored by affection for claimant and a natural tendency to agree with the symptoms and limitations claimant alleges. Most importantly, significant weight cannot be given to Ms. Olivas' statements because it, like claimant's, is simply not consistent with the preponderance of the opinions and observations by medical doctors in this case.

(AR 12).

The ALJ could properly discount Ms. Olivas' testimony as inconsistent with the medical record, which he reviewed in detail (AR 9-15). Plaintiff does not address any particular medical records which demonstrate that Ms. Olivas' observations are fully supported by the reports of treating physicians. *See Simons*, 114 Fed.Appx. at 733. Plaintiff's claim of error that the ALJ did not properly consider the unsworn statement of plaintiff's friend should be denied.

> **D.  Did the ALJ err when he failed to evaluate the plaintiff's mental impairment and resulting functional limitations as required by 20 C.F.R. § 416.920a and case law?**

While plaintiff's statement of error refers to ALJ Jones' failure to evaluate plaintiff's mental impairment pursuant to 20 C.F.R. § 416.920a, his argument does not address any specific deficiency related to this regulation. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, the court deems plaintiff's this argument related to § 416.920a waived.

The gist of plaintiff's argument is that ALJ Jones "found an incomplete residual functional capacity." Plaintiff's Brief at pp. 16-17. Specifically, plaintiff contends that ALJ Jones

made an incomplete RFC determination which did not account for plaintiff's mood disorders or his "limitations and symptoms from his lack of intellect and illiteracy." Plaintiff's Brief at pp. 16-17. Plaintiff's contention is without merit. RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 416.945. RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *See Cohen v. Secretary of Health and Human Services*, 964 F.2d 524, 530 (6th Cir. 1992).

Here, ALJ Jones found that plaintiff had the RFC "to perform a full range of work at all exertional levels, but is non-exertionally limited to simple, routine, and repetitive tasks with occasional interaction with the public" (AR 9). This RFC accounted for plaintiff's affective disorder by limiting him to unskilled, simple, routine and repetitive work (AR 9, 15-16). Unskilled work, by definition, incorporates some non-exertional components, consisting of "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). *See generally, Smith v. Halter*, 307 F.3d 377, 378-79 (6th Cir. 2001) (where ALJ found that claimant "often" suffered problems with concentration, limiting claimant to jobs that are routine and low stress and which do not involve intense interpersonal confrontations appropriately addressed that impairment); *Allison v. Apfel*, No. 99-4090, 2000 WL 1276950 at *4 (6th Cir. Aug. 30, 2000) (where the ALJ found that the claimant suffered from nonexertional impairments of a borderline personality disorder, borderline intellectual functioning and substance addiction, the ALJ's RFC accounted for these impairments by limiting the claimant to simple,

repetitive and routine work at the light exertional level, which was analogous to unskilled light work).

Finally, plaintiff contends that the ALJ's RFC did not address his lack of intellect and illiteracy. As an initial matter, there was no finding that plaintiff was illiterate. Plaintiff testified that he completed the 11th grade (AR 38). Based on the record, the ALJ found that plaintiff had a limited education and was able to communicate in English (AR 15). *See* 20 C.F.R. § 416.964 (1)-(4) (categorizing a claimant's education as (1) illiteracy, (2) marginal education, (3) limited education, or (4) high school education and above). Even if the ALJ had accepted the premise that plaintiff was illiterate, any error in the disability determination was harmless. At the administrative hearing, upon questioning by plaintiff's attorney and the ALJ, the VE testified that the three jobs consistent with plaintiff's RFC, i.e., dishwasher, janitor and assembler, could be performed by an illiterate person (AR 58-59). Accordingly, plaintiff's claim of error should be denied.

### IV.    Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.

Dated:  September 8, 2014                              /s/ Hugh W. Brenneman, Jr.
                                                      HUGH W. BRENNEMAN, JR.
                                                      United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).